(Slip Opinion)                OCTOBER TERM, 2004                1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MID-CON FREIGHT SYSTEMS, INC., ET AL. *v.* MICHIGAN PUBLIC SERVICE COMMISSION ET AL.

### CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

No. 03–1234.   Argued April 26, 2005—Decided June 20, 2005

Federal law requires most interstate truckers to obtain a permit (Federal Permit) that reflects compliance with certain federal requirements.  The 1965 version of the law authorized States to require proof that a truck operator had such a permit.  By 1991, 39 States demanded such proof, requiring a $10 per truck registration fee (State Registration) and giving each trucker a stamp to affix to a multistate "bingo card" carried in the vehicle.  Finding this scheme inefficient and burdensome, Congress created the current Single State Registration System (SSRS), which allows a trucking company to fill out one set of forms in one State (base State), thereby registering its Federal Permit in every participating State through which its trucks travel.  49 U. S. C. §14504(c).  The base State can demand proof of the Federal Permit, proof of insurance, the name of an agent to receive service of process, and a fee equal to the sum of the individual state fees.  §§14504(c)(2)(A)(i)–(iv).  The SSRS prohibits a State from imposing any additional "State registration requirement." §14504(b).  Michigan Comp. Laws Ann. §478.2(2) imposes an annual $100 fee on each Michigan license-plated truck operating entirely in interstate commerce.  Petitioner interstate trucking companies subject to §478.2(2) sought to have it invalidated, but the Michigan Court of Claims refused.  The State Court of Appeals affirmed, holding that, because the fee is imposed for the administration of the State's Motor Carrier Act and for enforcement of state safety regulations, it is not a "registration requirement" pre-empted by §14504(b).

*Held:* Section §14504 does not pre-empt Michigan's $100 fee.  Pp. 5–13.

   (a) Reference to text, historical context, and purpose disclose that the words "State registration requirement" in §14504(b)'s second sentence apply only to those state requirements concerning SSRS regis-

tration. Statutory language makes clear that the federal provision reaches no further. The subsection's first sentence uses the words "State registration" to refer only to state systems seeking evidence that a trucker has complied with the specific SSRS obligations enumerated in §§14504(c)(2)(A)(i)–(iv). No language in the second sentence suggests that the same words should be given a different, broader meaning there. Nor does any language elsewhere in the statute suggest that "State registration requirement" refers to *any* kind of State Registration whatsoever that might affect interstate carriers, or to those state requirements imposed by reason of a motor carrier's operation in interstate commerce. The implementing regulations also do not support a broader meaning. Historical context confirms this reading. Congress enacted §14504 to simplify the "bingo card" system, which placed no constraints on any state filings or fees other than those concerning Federal Permit and insurance requirements. In creating the SSRS, Congress gave no indication that the pre-emptive scope of the new scheme would be any broader than that of the old. Finally, nothing in the statute's basic purposes or objectives—improving the "bingo card" system's efficiency and simplifying a uniform scheme for providing States with certain vital information—either requires a broader reading of the statutory term or impliedly pre-empts non-SSRS-related state rules. Pp. 5–11.

(b) Section 478.2(2)'s requirements do not concern the SSRS's subject matter. First, the Michigan statute makes no reference to evidence of a Federal Permit, an insurance requirement, or an agent for receiving service of process. Nor do any state rules related to the fee appear to require the filing of information on these matters. In addition, because Michigan imposed its separate fee before the SSRS existed and before it began to participate in the "bingo card" system, the fee does not represent an effort to circumvent the limitations imposed in connection with federal laws governing State Registration of Federal Permits. Finally, petitioners have failed to show that Michigan rules do not allow a Michigan-plated interstate truck choosing Michigan as its base State to comply with the SSRS requirements even if it does not comply with §478.2(2). The fact that Michigan appears to forgive the State's $10 SSRS fee for trucks that comply with §478.2(2) can be seen as an effort to provide a modest, administratively efficient recompense to those motor carriers that choose Michigan as their base State, but such a subsidiary connection cannot transform the State's fee into a requirement concerning the SSRS statute's subject matter. Pp. 11–13.

255 Mich. App. 589, 662 N. W. 2d 784, affirmed.

BREYER, J., delivered the opinion of the Court, in which STEVENS,

Syllabus

SCALIA, SOUTER, THOMAS, and GINSBURG, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which REHNQUIST, C. J., and O'CONNOR, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 03–1234

## MID-CON FREIGHT SYSTEMS, INC., ET AL., PETITIONERS *v.* MICHIGAN PUBLIC SERVICE COMMISSION ET AL.

### ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

[June 20, 2005]

JUSTICE BREYER delivered the opinion of the Court.

This case concerns pre-emption. A Michigan law imposes "an annual fee of $100.00" upon each Michigan license-plated truck that is "operating entirely in interstate commerce." Mich. Comp. Laws Ann. §478.2(2) (West 2002) (hereinafter MCL). A federal statute states that "a *State registration requirement* . . . is an unreasonable burden" upon interstate commerce when it imposes so high a fee. 49 U. S. C. §14504(b) (emphasis added); see also §14504(c)(2)(B)(iv)(III). Does this federal statutory provision pre-empt the Michigan law? We conclude that the Michigan fee requirement is not the kind of "State registration requirement" to which the federal statute refers. And for that reason, the statute does not pre-empt it.

I

A

Federal law has long required most motor carriers doing interstate business to obtain a permit—which we shall call a Federal Permit—that reflects compliance with certain

federal requirements.  See 49 U. S. C. §13901 *et seq.;* 49
CFR §365.101 *et seq.* (2004).  In 1965, Congress authorized
States to require proof that the operator of an interstate
truck had secured a Federal Permit.  49 U. S. C. §302(b)(2)
(1976 ed.); see generally *Yellow Transp., Inc.* v. *Michigan*,
537 U. S. 36, 39 (2002).  By 1991, 39 States demanded
such proof by requiring some form of what we shall call
State Registration (of the Federal Permit).  Those States
typically would require truckers to file with a state agency
evidence that each interstate truck was covered by a
Federal Permit.  They would require the trucker to pay a
State Registration fee of up to $10 per truck.  And they
would issue a State Registration stamp that the trucker
would affix to a multistate "bingo card" carried within the
vehicle.  See 49 CFR §§1023.32, 1023.33 (1990); *Yellow
Transp.*, 537 U. S., at 39.

  In 1991, Congress focused upon the fact that the "bingo
card" system required a trucking company to obtain a
separate stamp from each State through which an inter-
state truck traveled.  It found this scheme inefficient and
burdensome.  See *id.,* at 39–40.  And it enacted a statute
setting forth a new system, the Single State Registration
System (SSRS), which remains in effect today.  Intermodal
Surface Transportation Efficiency Act of 1991 (ISTEA), 49
U. S. C. §14504.  The SSRS allows a trucking company to
fill out *one* set of forms in *one* State (the base State), and
by doing so to register its Federal Permit in *every* partici-
pating State through which its trucks will travel.
§14504(c); 49 CFR §367.4(b) (2004).

  The SSRS statute says that the base State can demand:
(1) proof of the trucking company's possession of a Federal
Permit, (2) proof of insurance, (3) the name of an agent
designated to receive "service of process," and (4) a total
fee (charged for the filing of the proof of insurance) equal
to the sum of the individual state fees.  49 U. S. C.
§§14504(c)(2)(A)(i)–(iv); 49 CFR §§367.4(c)(1)–(4) (2004).

Each individual state fee, it adds, cannot exceed the amount the State charged under the "bingo card" system, and in no event can it exceed $10 per truck. 49 U. S. C. §14504(c)(2)(B)(iv)(III). After a truck owner registers, base state officials provide the owner with a receipt to be kept in the cab of each registered truck. 49 CFR §§367.5(a), (b), (e) (2004). The base State distributes to each participating State its share of the total registration fee. §367.6(a).

The SSRS statute specifies that a State may not impose any additional "registration requirement." It states specifically, in the statutory sentence at issue here, that when a State Registration requirement imposes further obligations, "the part in excess is an unreasonable burden." 49 U. S. C. §14504(b). It adds that a State may not require "decals, stamps, cab cards, or any other means of registering . . . specific vehicles." §14504(c)(2)(B)(iii). And it provides that the "charging or collection of any fee under this section that is not in accordance with the fee system established [in this provision] shall be deemed to be a burden on interstate commerce." §14504(c)(2)(C). At the same time, the statute makes clear that a State that complies with the SSRS system need not fear Commerce Clause attack, for it says that a state requirement that an interstate truck "must register with the State" is "not an unreasonable burden on transportation," provided that "the State registration is completed" in accordance with the SSRS statute. §14504(b).

B

The state law at issue here, §478.2(2) of the Michigan Motor Carrier Act, reads as follows:

"A motor carrier licensed in this state shall pay an annual fee of $100.00 for each vehicle operated by the motor carrier which is registered in this state [*i.e.*, which has a Michigan license plate] and operating en-

tirely in interstate commerce."   MCL §478.2(2) (West 2002).

Related state rules and regulations require a carrier paying the $100 fee to identify each interstate truck by make, type, year, serial number, and unit number.   See Equipment List Form P–344–T, App. to Defendant's Response to Plaintiffs' Motion for Summary Disposition in No. 95–15628–CM etc. (Mich. Ct. Cl.) (hereinafter Equipment List Form P–344–T).   They also make clear that, upon payment of the fee, the carrier will receive a decal that must be affixed to the truck.   App. 24 (Affidavit of PSC official Thomas R. Lonergan).   And they provide that a carrier who pays this fee need not pay the $10 SSRS registration fee if the carrier chooses Michigan as its SSRS base State.   See, *e.g., id.*, at 67, n.; *Westlake Transp.*, *Inc.* v. *Mich. Pub. Serv. Comm'n*, 255 Mich. App. 589, 603–604, n. 6, 662 N. W. 2d 784, 790–792, n. 6 (2003); Reply Brief for Petitioners 14–15, n. 8.

## C

Petitioners are interstate trucking companies with trucks that bear Michigan license plates and operate entirely in interstate commerce.   Hence they are subject to Michigan's $100 fee.   MCL §478.2(2) (West 2002).   They asked a Michigan court to invalidate §478.2(2) as preempted by the federal SSRS statute.   255 Mich. App., at 592, 662 N. W. 2d, at 789–790.   The Michigan Court of Claims rejected their claim.   *Id.*, at 593–594, 662 N. W. 2d, at 789–790.   And the Michigan Court of Appeals affirmed. *Id.*, at 604, 662 N. W. 2d, at 795.

The Court of Appeals wrote that the $100 fee is a "regulatory fee"—a "fee imposed for the administration" of the State's Motor Carrier Act and for enforcement of Michigan "safety regulations."   *Ibid.*   As such, it falls outside the scope of the term "registration requirement" as used in the federal SSRS statute, 49 U. S. C. §14504(b).   255 Mich.

App., at 604, 662 N. W. 2d, at 795. The federal statute, according to the Michigan court, consequently does not pre-empt it. *Ibid.*

Petitioners sought leave to appeal to the Michigan Supreme Court; leave was denied. *Westlake Transp., Inc.* v. *Mich. Pub. Serv. Comm'n*, 469 Mich. 976, 673 N. W. 2d 752 (2003). We granted their petition for certiorari and consolidated the case with *American Trucking Assns., Inc.* v. *Michigan Pub. Serv. Comm'n*, No. 03–1230, a case in which interstate truckers sought review of a separate Michigan fee. We now affirm the Michigan court's judgment in this case, though for other reasons.

## II

### A

The first legal question before us concerns the meaning of the federal statutory words "State registration requirement." They appear in a subsection that reads in relevant part as follows:

> "The requirement of a State that a motor carrier, providing [interstate transportation] in that State, must register with the State is not an unreasonable burden on transportation . . . when the State registration is completed under standards of the Secretary [of Transportation] under subsection (c). When a *State registration requirement* imposes obligations in excess of the standards of the Secretary, the part in excess is an unreasonable burden." 49 U. S. C. §14504(b) (emphasis added).

What is the scope of the italicized words?

Petitioners ask us to give these words a broad interpretation, sweeping within their ambit every state requirement involving some form of individualized registration that affects an interstate motor carrier. Brief for Petitioners 15 (federal statute's limits apply "to *all* interstate

motor carriers compelled to register their operations with *any* State regulatory commission under any State law" (emphasis in original)). The United States argues for a somewhat narrower interpretation, submitting that the words apply to "state registration requirements that are imposed on interstate carriers *by reason of* their operation in interstate commerce." Brief for United States as *Amicus Curiae* 19–20 (emphasis in original). In our view, however, the language, read in context, is yet more narrow.

Reference to text, historical context, and purpose discloses that the words "State registration requirement" do not apply to *every* State Registration requirement that happens to cover interstate carriers, nor to *every* such requirement specifically focused on a trucking operation's interstate character. Rather, they apply only to those state requirements that concern *SSRS registration*—that is, registration with a State of evidence that a carrier possesses a Federal Permit, registration of proof of insurance, or registration of the name of an agent "for service of process." §14504(c)(2)(A)(iv). Thus, the federal provision pre-empts only those state requirements that (1) concern the subject matter of the SSRS and (2) are "in excess" of the requirements that the SSRS imposes in respect to that subject matter. See §14504(b).

To begin with, statutory language makes clear that the federal provision reaches no further. Section 14504(b)'s first sentence says that a state "requirement" that an interstate motor carrier must "register with the State is not an unreasonable burden . . . when the State registration is completed under standards of the Secretary under subsection (c)." *Ibid.* It is clear from the text as a whole that "State registration" cannot cover *all* registration requirements, but only some. Cf. *post*, at 9–10 (KENNEDY, J., dissenting). The first sentence's reference to the "standards of the Secretary" (as well as the focus of the entire

statute) tells us which. Those "standards," set forth in subsection (c)—which is titled "Single State Registration System"—exclusively relate to State Registration of "evidence of" a Federal Permit, "proof of" insurance, and the "name of a local agent for service of process," and state fees "for the filing of proof of insurance." §§14504(c)(2)(A)(i)–(iv); §14504(c)(2)(B)(iv). And the rest of the statute similarly deals exclusively with SSRS matters. See §14504(a) ("standards" mean "the specification of forms and procedures required" to prove that a motor carrier is in compliance with federal requirements). Thus, the words "State registration" in the pre-emption provision's first sentence refer only to state systems that seek evidence that a trucker has complied with specific, federally enumerated, *SSRS* obligations. Cf. 49 U. S. C. §13908(d) (§14504's fees relate specifically to state efforts to obtain proof of insurance under the SSRS); §§13908(b)(2)–(3) (indicating that §14504 refers to state requirements having this purpose).

How could the same words in the second sentence refer to something totally different? We have found no language here or elsewhere in the statute (which we reproduce in the Appendix, *infra*) suggesting that the term "State registration requirement" in sentence two refers to all State Registration requirements "imposed on interstate carriers *by reason of* their operation in interstate commerce." Brief for United States as *Amicus Curiae* 20 (emphasis in original). Indeed, to read the words "by reason of . . ." into §14504, a linguistic stretch, would be wholly inconsistent with the statute's basic purposes, because it would leave a State free to implement a regulation in excess of specific SSRS limitations as long as it did not single out interstate carriers (say, a neutral rule that all truckers must pay $50, or $500, per truck for proof of insurance, or must designate multiple agents for service of process). See *post*, at 8 (KENNEDY, J., dissenting).

To avoid this severely incongruous result, the dissent (which adopts the Government's view) must resort to interpretive acrobatics. After first reading subsection (b) to say that a neutral base State requirement, despite being "in excess" of SSRS standards, is not an "unreasonable burden on" commerce, it then reads subsection (c) to say that such a requirement, *because* it is "in excess" of SSRS standards, is nonetheless prohibited by the statute (in effect, an unreasonable burden on commerce). *Post*, at 11–13. Aside from imposing significant complexities on the statute where otherwise none would exist, this reading stretches subsection (c)'s function beyond that which its structure and language will allow.

Similarly, we see no language elsewhere in the statute suggesting that the term "State registration requirement" refers to *any* kind of State Registration whatsoever that might affect interstate carriers. And even the Government concedes that certain registration obligations—those in "traditional areas of state regulation"—are beyond the pre-emptive reach of the statute. Brief for United States as *Amicus Curiae* 19. Finally, the implementing regulations do not support these broader constructions. See 49 CFR §367.1 *et seq.* (2004).

Our reading of the text finds confirmation in historical context. Congress enacted §14504 to simplify the old "bingo card" system. See *Yellow Transp.,* 537 U. S., at 39–40. Under the "bingo card" scheme, *each* State could independently demand the same separate filings (evidence of a Federal Permit, proof of insurance, and a service-of-process agent) as well as separate fees. 49 U. S. C. §302(b)(2) (1976 ed.); §11506 (1988 ed.); 49 CFR §§1023.11, 1023.21, 1023.32, 1023.51 (1990). Federal law governing that scheme placed no express constraints on any state filings or fees other than those concerning Federal Permit and insurance requirements. Indeed, federal regulations specified that the federal "bingo card" statute

did not "affect" the "collection or [the] method of collection of taxes or fees by a State" from interstate truckers "for the operation of vehicles within" its "borders." §1023.104. And they further provided that the statute did not "affect" state requirements "as to the external identification of vehicles to indicate the payment of a State tax or fee imposed for revenue purposes or for any other purpose" not governed by the "bingo card" system. §1023.42.

When Congress created the new SSRS, it did not indicate (in the text, structure, or divinable purpose of the new provision) that the pre-emptive scope of the new scheme would be any broader than that of the old. See ISTEA, 105 Stat. 1914. The relevant differences between the SSRS and the "bingo card" regime were that: (1) one State, rather than many, would collect the relevant filings; (2) one State, rather than many, would collect the relevant fees; and (3) these fees, limited to the same amount as before, would relate to filing of proof of insurance rather than to filing of the Federal Permit. Compare 49 U. S. C. §11506 (1988 ed.) with §14504 (2000 ed.); see also §11506 (1988 ed., Supp. IV). These modifications merely sought more efficient, not greater, federal regulation. See *Yellow Transp., supra;* see also 49 U. S. C. §§13908(a), (d) (authorizing the Secretary to replace the SSRS with a yet more streamlined system and pre-empting only those State "insurance filing requirements or fees that *are for the same purposes* as filings or fees the Secretary requires under the new system" (emphasis added)). And while the new regulations implementing the SSRS do not explicitly exempt unrelated state requirements from the statute's pre-emptive reach, neither they nor the rulemaking that produced them suggest any change to pre-existing practice in this respect. See 49 CFR §367.1 *et seq.* (2004); see also *Single-State Insurance Registration*, 9 I. C. C. 2d 610 (1993) (Interstate Commerce Commission decision announcing new regulations); *Single State Insurance Regis-*

*tration*, No. MC–100 (Sub-No. 6), 1993 WL 17833 (I. C. C.,
Jan. 13, 1993) (proposing regulations, providing justifica-
tions, and soliciting further comments).

Finally, we have found nothing in the statute's basic
purposes or objectives—improving the efficiency of the
"bingo card" system and simplifying a uniform scheme for
providing States with certain vital information—that
either requires a broader reading of the statutory term, or
that impliedly pre-empts other, non-SSRS-related state
rules. Cf. *Geier* v. *American Honda Motor Co.*, 529 U. S.
861, 881 (2000) (federal statutes by implication pre-empt
state law that stands "as an obstacle to the accomplish-
ment and execution" of their federal objectives (internal
quotation marks omitted)). That is, we can find no indica-
tion that Congress sought to use this narrowly focused
statute to forbid state fee or registration obligations that
have nothing to do with basic SSRS (or earlier "bingo
card") objectives—say, for example, a State Registration
requirement related to compliance by interstate carriers
with rules governing the introduction of foreign pests into
the jurisdiction, or with a State's version of the Amber
Alert system, or with size, weight, and safety standards.
The Constitution's Commerce Clause may (or may not)
forbid some such rules. But this statute—which identifies
and regulates very specific items—says nothing about
them, and there is no reason to believe that Congress
wished to resolve *that* kind of Commerce Clause issue in
this provision. Cf. 49 U. S. C. §13908 (indicating that the
SSRS may well be only a temporary system and similarly
focusing on limited, federally enumerated requirements
without discussing broad pre-emption).

We conclude, as we have said, that the term "State
registration requirement," as used in the second sentence
of the SSRS statute, covers only those State Registration
requirements that concern the subject matter of that
statutory provision, namely the registration of a Federal

Permit, proof of insurance, and the name of an agent for service of process. See *supra*, at 5–6. It neither explicitly nor implicitly reaches unrelated matters.

## B

The second legal question involves the Michigan statute imposing the $100 fee on Michigan-plated trucks operating entirely in interstate commerce. MCL §478.2(2) (West 2002). Do the requirements set forth in that statute concern the SSRS statute's subject matter? We think that they do not.

For one thing, the Michigan statute imposing the $100 fee makes no reference to evidence of a Federal Permit, to any insurance requirement, or to an agent for receiving service of process. Nor, as far as we can tell, do any state rules related to the $100 fee require the filing of information about these matters. See Equipment List Form P–344–T (requiring information about truck make, type, year, unit number, and serial number).

For another thing, Michigan law imposed a separate fee on interstate motor carriers with trucks license plated in Michigan before the SSRS existed and before Michigan began to participate in the "bingo card" system. See App. 24–25; Plaintiffs' Second Motion for Partial Summary Disposition in No. 95–15628–CM etc. (Mich. Ct. Cl.), p. 5; Plaintiffs-Appellants' Brief on Appeal, in No. 226052 etc. (Mich. Ct. App.), pp. 5–6; MCL §478.7(4) (West 2002). Hence such a fee does not represent an effort somehow to circumvent the limitations imposed in connection with federal laws governing State Registration of Federal Permits.

Finally, Michigan rules provide that a Michigan-plated interstate truck choosing Michigan as its SSRS base State can apparently comply with Michigan's SSRS requirements even if it does not comply with Michigan's $100 fee requirement. The owner of that truck can fill out Michi-

gan form RS–1, thereby providing Michigan with evidence
that it has a Federal Permit.  App. 65–66.  It can also fill
out form RS–2, on which it indicates the total SSRS fees it
owes to all participating States whose borders the truck
will cross.  *Id.,* at 67.  Upon submission of the two forms
and payment of the fees, Michigan apparently will give the
owner form RS–3, an SSRS receipt, a copy of which the
owner can place in the vehicle of the truck, thereby com-
plying with Michigan's (and all other participating States')
SSRS-related "State registration requirements."  If that
owner fails to pay Michigan's $100 fee for that truck, the
owner will not receive a state fee decal.  But that owner
will have violated only Michigan's $100 fee statute here at
issue, MCL §478.2(2) (West 2002).  Petitioners have pro-
vided us with nothing that suggests the owner will have
violated any other provision of Michigan law.  See
§478.7(4).  And they have not demonstrated that Michigan
law in practice holds hostage a truck owner's SSRS com-
pliance until the owner pays §478.2(2)'s $100 fee.

On the other hand, we recognize that Michigan form
RS–2, the form that lists all SSRS-participating States
together with their SSRS-related fees, places an asterisk
next to Michigan and states that "[v]ehicles base-plated in
Michigan need not" pay any SSRS fee but "are required to
have a $100.00" Michigan decal.  App. 67.  Michigan
thereby forgives Michigan-plated interstate trucks (which
must pay Michigan $100) payment of the $10 Michigan
SSRS fee that would otherwise be due.  And to that extent,
there is a connection between the $100 fee and the SSRS.

Michigan appears to forgive its $10 SSRS fee, however,
only for the Michigan-plated interstate trucks of a carrier
that has chosen Michigan as its SSRS "base" State.  See
Reply Brief for Petitioners 14–15, n. 8.  Michigan-plated
trucks operating out of a different SSRS base State, say,
Ohio, must pay the fee, which is remitted back to Michi-
gan.  Thus, the $10 reduction can be seen simply as an

effort to provide modest, administratively efficient (because Michigan itself is handling both fees) recompense to those motor carriers that operate Michigan-plated trucks and choose Michigan as their SSRS base State. That subsidiary connection cannot transform Michigan's $100 fee, which exclusively involves non-SSRS subject matter (and was created for non-SSRS-related reasons), into a requirement that concerns the subject matter of the SSRS statute.

\*    \*    \*

For these reasons, we conclude that 49 U. S. C. §14504(b) does not pre-empt Michigan's $100 fee. The judgment of the Michigan Court of Appeals is affirmed.

*It is so ordered.*

APPENDIX TO OPINION OF THE COURT

Title 49 U. S. C. §14504 provides:

"Registration of motor carriers by a State

"(a) DEFINITIONS.—In this section, the terms 'standards' and 'amendments to standards' mean the specification of forms and procedures required by regulations of the Secretary to prove the lawfulness of transportation by motor carrier referred to in section 13501.

"(b) GENERAL RULE.—The requirement of a State that a motor carrier, providing transportation subject to jurisdiction under subchapter I of chapter 135 and providing transportation in that State, must register with the State is not an unreasonable burden on transportation referred to in section 13501 when the State registration is completed under standards of the Secretary under subsection (c). When a State registration requirement imposes obligations in excess of the standards of the Secretary, the part in excess is an unreasonable burden.

"(c) SINGLE STATE REGISTRATION SYSTEM.—

"(1) IN GENERAL.—The Secretary shall maintain standards for implementing a system under which—

"(A) a motor carrier is required to register annually with only one State by providing evidence of its Federal registration under chapter 139;

"(B) the State of registration shall fully comply with standards prescribed under this section; and

"(C) such single State registration shall be deemed to satisfy the registration requirements of all other States.

"(2) SPECIFIC REQUIREMENTS.—

"(A) EVIDENCE OF FEDERAL REGISTRATION; PROOF OF INSURANCE; PAYMENT OF FEES.—Under the standards of the Secretary implementing the single State

Appendix to opinion of the Court

registration system described in paragraph (1) of this subsection, only a State acting in its capacity as registration State under such single State system may require a motor carrier registered by the Secretary under this part—

"(i) to file and maintain evidence of such Federal registration;

"(ii) to file satisfactory proof of required insurance or qualification as a self-insurer;

"(iii) to pay directly to such State fee amounts in accordance with the fee system established under subparagraph (B)(iv) of this paragraph, subject to allocation of fee revenues among all States in which the carrier operates and which participate in the single State registration system; and

"(iv) to file the name of a local agent for service of process.

"(B) RECEIPTS; FEE SYSTEM.—The standards of the Secretary—

"(i) shall require that the registration State issue a receipt, in a form prescribed under the standards, reflecting that the carrier has filed proof of insurance as provided under subparagraph (A)(ii) of this paragraph and has paid fee amounts in accordance with the fee system established under clause (iv) of this subparagraph;

"(ii) shall require that copies of the receipt issued under clause (i) of this subparagraph be kept in each of the carrier's commercial motor vehicles;

"(iii) shall not require decals, stamps, cab cards, or any other means of registering or identifying specific vehicles operated by the carrier;

"(iv) shall establish a fee system for the filing of proof of insurance as provided under subparagraph (A)(ii) of this paragraph that—

"(I) is based on the number of commercial motor

vehicles the carrier operates in a State and on the number of States in which the carrier operates;

"(II) minimizes the costs of complying with the registration system; and

"(III) results in a fee for each participating State that is equal to the fee, not to exceed $10 per vehicle, that such State collected or charged as of November 15, 1991; and

"(v) shall not authorize the charging or collection of any fee for filing and maintaining evidence of Federal registration under subparagraph (A)(i) of this paragraph.

"(C) PROHIBITED FEES.—The charging or collection of any fee under this section that is not in accordance with the fee system established under subparagraph (B)(iv) of this paragraph shall be deemed to be a burden on interstate commerce.

"(D) LIMITATION ON PARTICIPATION BY STATES.— Only a State which, as of January 1, 1991, charged or collected a fee for a vehicle identification stamp or number under part 1023 of title 49, Code of Federal Regulations, shall be eligible to participate as a registration State under this subsection or to receive any fee revenue under this subsection."

# SUPREME COURT OF THE UNITED STATES

_____

## No. 03–1234

_____

## MID-CON FREIGHT SYSTEMS, INC., ET AL., PETITIONERS *v.* MICHIGAN PUBLIC SERVICE COMMISSION ET AL.

### ON WRIT OF CERTIORARI TO THE COURT OF APPEALS OF MICHIGAN

[June 20, 2005]

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE and JUSTICE O'CONNOR join, dissenting.

The Michigan Court of Appeals, in my view, erred in holding that Mich. Comp. Laws Ann. §478.2(2) (West 2002) (hereinafter MCL) is not a registration requirement. *Westlake Transp., Inc.* v. *Pub. Serv. Comm'n*, 255 Mich. App. 589, 603–605, 662 N. W. 2d 784, 795 (2003). Our Court, too, errs by concluding that the term "State registration requirement" in 49 U. S. C. §14504(b) includes only those State registration requirements that "concern the [same] subject matter" as the Single State Registration System (SSRS) established by §14504(c). *Ante*, at 6, 10–11. This respectful dissent explains my reasons for rejecting these two holdings.

## I

Title 49 U. S. C. §14504(b) provides:

"The requirement of a State that a motor carrier, providing [interstate transportation] in that State, must register with the State is not an unreasonable burden on transportation . . . when the State registration is completed under standards of the Secretary [of Transportation] under [§14504(c)]. When a State reg-

istration requirement imposes obligations in excess of
the standards of the Secretary, the part in excess is an
unreasonable burden."

The dispositive question in the instant case is whether
MCL §478.2(2) is a "State registration requirement"
within the meaning of the second sentence of 49 U. S. C.
§14504(b). The Michigan Court of Appeals said the an-
swer is no because MCL §478.2(2) is not a registration
requirement at all. The Court also says the answer is no,
but for a different reason. It concludes that, even though
§478.2(2) is a registration requirement, the term "registra-
tion requirement" in 49 U. S. C. §14504(b) includes only
the subset of registration requirements that concern the
same subject matter as the SSRS. Neither the Court's
reason, nor the different reason given by the Michigan
Court of Appeals, is persuasive.

## A

The Michigan Court of Appeals adopted a categorical
rule: "If the purpose of a fee is to regulate an industry or
service, it can be properly classified as a regulatory fee,"
not a registration fee. *Westlake Transp.*, *supra*, at 605,
662 N. W. 2d, at 795. Proceeding to apply the rule so
announced, the Court of Appeals held that the $100 fee
imposed by MCL §478.2(2) on Michigan-plated interstate
carriers is a regulatory fee rather than a registration fee
because the fee "is imposed for the administration of the
[Michigan Motor Carrier Act], particularly covering costs
of enforcing safety regulations." 255 Mich. App., at 604,
662 N. W. 2d, at 795.

The majority affirms the judgment below, but "for other
reasons." *Ante*, at 5. The Court's reluctance to adopt the
Michigan Court of Appeals' rationale is understandable.
MCL §478.2(2) and related state rules and regulations
require a motor carrier that wants to operate Michigan-
plated vehicles in interstate commerce in Michigan to fill

out a form providing detailed identifying information for each vehicle and to pay a $100-per-vehicle fee. In return, the State provides the carrier with decals that it must place on its trucks. See *ante*, at 3–4. If this is not a "State registration requirement" in the general and ordinary sense of the term, it is hard to conceive of what is.

The Court of Appeals' holding would allow the State to convert any registration fee into a regulatory fee simply by declaring a regulatory purpose or spending some portion of the money collected on regulation or administration. The logic of this approach excludes from the coverage of 49 U. S. C. §14504(b) almost all state requirements, including those dealing with similar subject matter as the SSRS. The purpose of SSRS requirements, after all, is to regulate the interstate motor carrier industry; and the fees collected are used to administer the system. The Court's disapproval of the Michigan Court of Appeals' reasoning is implicit in the Court's decision to affirm on a different ground. *Ante*, at 5. Yet the Court's affirmance of the Court of Appeals' decision, coupled with the Court's failure to make its apparent disagreement with the reasoning explicit, will result in the Michigan Court of Appeals' broad rule surviving to work additional mischief in future cases, a most undesirable result in this area, where fees and regulatory requirements are so pervasive.

### B

### 1

Although the Court appears to agree that MCL §478.2(2) imposes a state registration requirement on interstate motor carriers, it holds, nonetheless, that the provision is not pre-empted by 49 U. S. C. §14504(b). This, according to the Court, is because the phrase "State registration requirement" in §14504(b) refers not to state registration requirements generally, but only to those state registration requirements that concern the same subject

matter as the SSRS: registration of a federal permit, proof of insurance, and designation of an agent for service of process. *Ante*, at 10–11. Section 14504(b) simply cannot bear the narrowing construction the Court seeks to impose upon it.

The first sentence of §14504(b) authorizes States to impose registration requirements on interstate motor carriers if the registration "is completed under standards of the Secretary under [§14504(c)]," *i.e.*, under the SSRS. The second sentence of §14504(b) pre-empts "a State registration requirement" that imposes "obligations in excess" of the SSRS. There ought to be no question that MCL §478.2(2) is a state registration requirement. The Court seems to agree, at least when the phrase "State registration requirement" is used in its ordinary and general sense. It should also be apparent that the obligations imposed by §478.2(2) are in excess of those authorized by the standards of the Secretary under 49 U. S. C. §14504(c). The plain text of §14504(b), then, would appear to pre-empt MCL §478.2(2), at least when §478.2(2) is considered in isolation.

The Court, however, departs from the text of the statute. Title 49 U. S. C. §14504(b), by its terms, saves from pre-emption only one class of state registration requirements imposed on interstate motor carriers: those completed under standards of the Secretary under §14504(c), *i.e.*, those that are authorized under the SSRS. To this subset the Court adds a second class of state registration requirements saved from pre-emption: those that concern subject matters not covered under §14504(c). The problem, of course, is that the statute simply does not provide for the exemption the Court invents. There is no basis in the statutory text or structure for adding this limitation, and the Court cannot carry its heavy burden to show why the language Congress used in §14504(b) should not be given its ordinary meaning.

2

The Court makes only one textual argument for the limitation it superimposes on §14504(b)'s second sentence. The second sentence, the Court reasons, refers to the same set of state registration requirements discussed in the first sentence. It must follow, the Court says, that because the first sentence of §14504(b) refers to SSRS registration, the phrase "State registration requirement" in the second sentence refers only to state registration requirements that concern the same subject matter as the SSRS. *Ante*, at 6–7.

The Court's premise is faulty. The two terms in the first sentence—"requirement of a State that [an interstate motor carrier] must register" and "registration requirement"—are not, when taken by themselves, limited to state registration requirements concerning the same "subject matter" as the SSRS. These terms, like the term "State registration requirement" in the second sentence of §14504(b), refer generally to any state requirement that an interstate motor carrier register with the State. No narrower reading is necessary to make perfect sense of each of §14504(b)'s two sentences and of how they operate together. The first sentence of §14504(b) declares that the subset of state registration requirements consisting of those requirements authorized under the SSRS—*i.e.*, requirements "completed under standards of the Secretary under [§14504(c)]"—are not pre-empted. The second sentence of §14504(b) says that all other state registration requirements for interstate motor carriers are pre-empted. It is difficult to understand the Court's mighty struggle to resist this simple, direct reading of the statutory language.

The Court also observes that there is no language elsewhere in the statute or in the implementing regulations suggesting that "State registration requirement" in §14504(b) refers to all types of state registration requirements imposed on interstate motor carriers, and the Court

asserts that even the United States concedes that certain registration obligations in traditional areas of state regulation are beyond the statute's pre-emptive reach. *Ante*, at 8. The first claim is irrelevant and the second is wrong. Section 14504(b) itself makes clear its pre-emptive scope, and confirmation by other statutory provisions or administrative regulations is unnecessary. And, while the United States did say that §14504(b) was not "intended to pre-empt state laws and fees in traditional areas of state regulation," the reason the United States believes this is so is because §14054(b) does not pre-empt general registration requirements that do not apply specifically to interstate motor carriers. Brief as *Amicus Curiae* 19–20.

3

Perhaps sensing the weakness of its textual argument, the Court turns to statutory history. The Court is correct to say that, before the enactment of §14504(b) and the SSRS, federal law did not pre-empt state filings or fees other than those concerning federal permit and insurance requirements. *Ante*, at 8–9. Pre-SSRS federal regulations, furthermore, specified that the federal statute did not affect the power of States to collect other fees from interstate motor carriers or to require decals indicating payment of these fees. *Ibid*. This is beside the point, however. The extent of pre-emption before enactment of §14504(b) tells us little about §14504(b)'s pre-emptive effect. Similarly, the fact that pre-SSRS federal regulations preserved other state registration requirements is of minimal significance when, as the Court admits, the new regulations contain no such provisions. *Ante*, at 9. If anything, the failure to repromulgate regulations saving other state registration fees from pre-emption suggests that the federal agency charged with implementing the SSRS did think that §14504(b) expanded the scope of federal pre-emption.

The Court's meaning is therefore obscure when it declares that Congress "did not indicate (in the text, structure, or divinable purpose of the new provision) that the pre-emptive scope of the new scheme would be any broader than that of the old." *Ibid.* Congress did indicate an expansion of federal pre-emption in §14504(b)'s "text" and "structure"—it did so by replacing a narrow pre-emption clause with a broad pre-emption clause. Congress is not required to say, "We really mean it." Cf. *Koons Buick Pontiac GMC, Inc.* v. *Nigh*, 543 U. S. \_\_\_, \_\_\_ (2004) (slip op., at 4) (SCALIA, J., dissenting) ("I hardly think it 'scant indication' of intent to alter [the meaning of a statute] that Congress *amended the text of the statute*" (emphasis in original)).

Perhaps the Court means to suggest that what appears to be the plain meaning of §14504(b) is put in doubt by the fact that the predecessor statute's pre-emptive scope was much more limited. Comparison with predecessor statutes, however, is permissible only to resolve statutory ambiguity that exists independent of the comparison with the predecessor statute; comparison with predecessor statutes cannot be used to create ambiguity about the meaning of an otherwise clear statute. *Lamie* v. *United States Trustee,* 540 U. S. 526, 533–535 (2004); see also *Koons Buick Pontiac GMC, Inc.*, 543 U. S., at \_\_\_ (slip op., at 1–2) (KENNEDY, J., concurring); *id.*, at \_\_\_ (slip op., at 1–2 (THOMAS, J., concurring in judgment); *id.*, at \_\_\_ (slip op., at 4) (SCALIA, J., dissenting).

4

The Court's final reason for imposing its narrowing construction on §14504(b) is that the Court has found "nothing in the statute's basic purposes . . . that either requires a broader reading of the statutory term . . . ." *Ante*, at 10. In the Court's view the only purpose of §14504 is to make minor improvements in the efficiency of

the old bingo card system. *Ante*, at 8–9. The Court makes no convincing argument that §14504(b)'s purpose was so limited. The Court, furthermore, does not explain why the statute's basic purposes require the Court's artificially narrow reading of the facially broad statutory command. The most the Court is willing to say is that it "can find no indication," *ante*, at 10, that when Congress said "State registration requirement," it meant "State registration requirement." So it says Congress must have meant "State registration requirement concerning the same subject matter as the SSRS." The text of §14504(b), however, does not admit of the qualifications the Court adds to it. The Court's argument from statutory purpose has no basis.

The Court suggests that if Congress intended §14504(b) to have the broad pre-emptive effect required by the text, Congress would have more clearly indicated that intention *Ibid.* ("[W]e can find no indication that Congress sought" to pre-empt requirements not related to SSRS subject matter). It is not entirely clear what sort of additional indication of congressional purpose the Court is looking for. The text, as noted above, does provide an indication of Congress' intent. Perhaps the Court is troubled by the absence of statements in the legislative history endorsing §14504(b)'s expansion of federal pre-emption. The lack of confirmatory legislative history, however, is not a legitimate reason for imposing an artificial narrowing construction on broad but clear statutory text. "[I]t would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute." *Harrison* v. *PPG Industries, Inc.,* 446 U. S. 578, 592 (1980). See also *Morales* v. *Trans World Airlines, Inc.,* 504 U. S. 374, 385, n. 2 (1992) ("[L]egislative history need not confirm the details of changes in the law effected by statutory language before we will interpret that language accord-

ing to its natural meaning"); *Chisom* v. *Roemer,* 501 U. S. 380, 406 (1991) (SCALIA, J., dissenting) ("We are here to apply the statute, not legislative history, and certainly not the absence of legislative history").

## II
### A

In my submission, the phrase "State registration requirement" in §14504(b) cannot be read as limited to state registration requirements that concern one particular subject matter. It should be noted, however, that this phrase is ambiguous in a different respect. Section 14504(b) might be read, on the one hand, to exempt interstate motor carriers from any non-SSRS state registration requirement, including general requirements that apply to all motor carriers or to some other set of entities. On the other hand, §14504(b) might be read to pre-empt only those non-SSRS registration requirements that apply specifically to interstate motor carriers. That is, §14504(b) might come into play only if being an interstate motor carrier is a necessary or sufficient condition for imposition of a state registration requirement. The United States takes the latter view of the statute, Brief as *Amicus Curiae* 17–22, and I am of the same opinion.

Though the phrase "State registration requirement" in the second sentence of §14504(b) is not qualified, it is clear from context that this term refers to a "requirement of a State that a motor carrier providing [interstate transportation] must register with the State," the more specific term that appears in §14509(b)'s first sentence. It is grammatically possible to read the statutory command as exempting interstate motor carriers from all registration requirements other than the SSRS, but that reading would lead to absurd results. It would suggest, for example, that interstate motor carriers with a principal place of business in Michigan do not have to register their pres-

ence for purposes of state tax collection.  In context, the
more natural and sensible reading of the phrase "require-
ment of a State that a motor carrier providing [interstate
transportation] must register with the State," includes
only those registration requirements that are triggered
specifically by the fact that the entity in question is an
interstate motor carrier.

Because §14504(b) pre-empts state registration re-
quirements that single out interstate carriers, but not
general state registration requirements that apply to
interstate carriers only incidentally, my analysis of
§14504(b) does not necessarily mean the Court's ultimate
conclusion in this case is incorrect.  Respondents contend
that MCL §478.2(2) applies only to trucks with Michigan
license plates, and that §478.2(2) should be considered
together with §478.2(1), which imposes a $100 fee on every
truck doing intrastate business within Michigan.  Accord-
ing to the respondents, then, 49 U. S. C. §14504(b) does
not come into play because interstate carriers are not
singled out; Michigan imposes the same $100 fee on all
for-hire motor vehicles license-plated in Michigan.  Brief
for Respondents 44–45.  The petitioners and the United
States take issue with this argument.  Reply Brief for
Petitioners 10–14; Brief for United States as *Amicus
Curiae* 24–29.

In my view it is not necessary to reach this question.
The Michigan Court of Appeals resolved the case on the
incorrect theory that a fee is not a registration fee if its
purpose is to regulate the industry.  Given its erroneous
view of the statute, the proper course should be to vacate
the Court of Appeals' decision and remand for further
proceedings.  Remanding the case would allow the Michi-
gan courts to consider the competing arguments in light of
the correct legal interpretation of 49 U. S. C. §14504(b).
The respondents would, at that stage, be able to advance
their arguments that MCL §478.2(2) is not pre-empted

when it is considered in conjunction with §478.2(1) or any other aspect of the statutory scheme that bears on whether Michigan imposes registration requirements specifically on interstate motor carriers beyond those authorized under the SSRS.

B

The Court insists that to read "requirement that a motor carrier providing [interstate transportation] must register with the State" as including only those requirements that apply specifically to interstate motor carriers would be "wholly inconsistent with the statute's basic purposes, because it would leave a State free to implement a regulation in excess of specific SSRS limitations as long as it did not single out interstate carriers . . . ." *Ante*, at 7. The Court is correct that, under my interpretation, 49 U. S. C. §14504(b) would not pre-empt general, neutral requirements, even if they dealt with subject matter similar to that covered by the SSRS. The Court is wrong, however, to suggest this therefore means an SSRS could collect from interstate motor carriers a $500 fee for proof of insurance or require designation of multiple agents for service of process, as long as the requirement in question applied evenhandedly to all motor carriers. The Court errs because it fails to give adequate consideration to the restrictions imposed by §14504(c).

Section 14504(c)(2)(A) declares that "only a State acting in its capacity as a registration State under [the SSRS] may require a motor carrier registered by the Secretary under [the SSRS]" to file proof of federal registration and proof of insurance, to collect fees for filing proof of insurance, and to maintain a local agent for service of process. Section §14504(c)(2)(B) constrains the SSRS registration requirements and fees the SSRS registration State can impose on interstate motor carriers. These sections contain an ambiguity similar to that which affects §14504(b).

Context, however, suggests that the ambiguity should be resolved differently. The best interpretation of §14504(c), in my submission, is that no State participating in the SSRS other than an interstate motor carrier's designated SSRS registration State may impose requirements of the sort listed in §14504(c)(2)(A) on that carrier, even if the requirement is general and applies to all motor carriers. The SSRS registration State, furthermore, may only impose on registered interstate motor carriers requirements related to those listed in §§14504(c)(2)(A)(i)–(iv) if the State conforms to the restrictions in §14504(c)(2)(B).

Taken together, the general pre-emption provision in §14504(b) and the specific limitations on SSRS registration States in §14504(c) establish a rational regulatory scheme. Whether or not a State participates in the SSRS, it cannot impose a registration requirement that singles out interstate motor carriers unless that requirement is authorized under the SSRS. States that participate in the SSRS may impose general, neutral registration requirements that happen to affect interstate motor carriers unless those requirements are inconsistent with the specific mandates of the SSRS related to proof of insurance, proof of federal permit, fees, and service of process. Non-SSRS States may impose any general, neutral registration requirement, even if they require interstate motor carriers, among others, to file proof of insurance or maintain a local agent for service of process.

The Court's interpretation leads to a less sensible scheme. According to the Court, that statute permits States to impose on interstate carriers any number of onerous requirements so long as these requirements are not explicitly linked to the subjects covered by the SSRS. The Court's interpretation, furthermore, means that those States which are excluded from the SSRS under §14504(c)(2)(D) may not apply general state registration requirements to interstate motor carriers if the require-

KENNEDY, J., dissenting

ments concern proof of insurance or registration of an agent for service of process. Under the Court's interpretation, the statute does not pre-empt state regulations that single out interstate carriers for special burdens well beyond what the SSRS allows, but it does prevent non-SSRS States from applying a number of modest, even-handed registration requirements to interstate carriers, even though the SSRS is not available to these States. That implausible result is not demanded by the statute's basic purposes.

\*　　\*　　\*

Instead of heeding what Congress actually said, the Court relies on flawed textual analysis and dubious inferences from legislative silence to impose the Court's view of what it thinks Congress probably wanted to say. In my view, this is a mistake. Other arguments, not considered by the Michigan Court of Appeals or by our Court, might support the ultimate outcome in this case. These arguments, however, ought to be addressed on remand.