CASPERS CONSTRUCTION COMPANY, APPELLANT,
V. NEBRASKA STATE PATROL, APPELLEE.
700 N.W.2d 587

Filed July 22, 2005.    No. S-03-1277.

Bradford E. Kistler, of Kinsey, Ridenour, Becker & Kistler, L.L.P., for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Caspers Construction Company (Caspers) was the subject of a compliance review conducted by the Nebraska State Patrol's carrier enforcement division to evaluate Caspers' highway safety performance. As a result of the review, Caspers was charged with multiple violations of federal motor carrier safety regulations adopted in Nebraska. Caspers was ultimately assessed a civil

penalty for the violations. On appeal, the district court affirmed the penalty. Caspers appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2002, Caspers received a letter from the U.S. Department of Transportation Federal Motor Carrier Safety Administration (FMCSA), stating that Caspers' highway safety performance was unacceptable. The letter requested immediate action by Caspers to correct the safety deficiencies and notified Caspers that an onsite compliance review would be conducted within the following 6 months. Further, the letter stated that any violations discovered during the review would subject Caspers to civil or criminal penalties.

In November 2002, a representative of the FMCSA visited Caspers. During the visit, the representative did not conduct a compliance review but instead determined that Caspers' business was intrastate and should be addressed by the Nebraska State Patrol. The FMCSA contacted the State Patrol, advising it to conduct a review of Caspers' compliance with federal safety regulations adopted in Nebraska. See Neb. Rev. Stat. § 75-363 (Cum. Supp. 2002). A sergeant with the State Patrol's carrier enforcement division arranged for Barb Aude, a trooper with the division, to conduct a compliance review of Caspers.

Trooper Aude completed the compliance review, finding Caspers to be in violation of several motor carrier safety regulations, including use of a driver without a valid motor vehicle operator's license or permit, failure to require a driver to make a record of duty status, failure to require a driver to prepare a driver vehicle inspection report, and use of a commercial motor vehicle not periodically inspected. As a result, a civil penalty was imposed against Caspers pursuant to an administrative order charging Caspers with 23 violations. Caspers requested a hearing to contest the penalty.

At the conclusion of the hearing, three violations involving interstate travel—one count each of failing to require a driver to make a record of duty status, failing to require a driver to prepare a driver vehicle inspection report, and using a commercial motor vehicle not periodically inspected—were withdrawn. Thereafter, the hearing officer recommended that the Superintendent of Law

Enforcement and Public Safety of the Nebraska State Patrol reduce the penalty to reflect the withdrawn violations and order a penalty of $8,575 to be assessed against Caspers for the remaining 20 violations. The superintendent adopted the hearing officer's recommendation and entered a decision and order accordingly. Caspers appealed, and the district court affirmed the order of the superintendent.

Caspers appeals the judgment of the district court.

## ASSIGNMENTS OF ERROR

Caspers presents four assignments of error, which may be condensed and restated as follows: The district court erred in finding that (1) sufficient evidence was adduced to show that the alleged violations occurred in Nebraska intrastate commerce and (2) the State Patrol had presented a prima facie case for the 17 violations contested by Caspers.

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Hahn v. Neth, ante* p. 164, 699 N.W.2d 32 (2005). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. *Id.* In an appeal under the Administrative Procedure Act, an appellate court will not substitute its factual findings for those of the district court where competent evidence supports the district court's findings. *Nebraska Liq. Distrib. v. Nebraska Liq. Cont. Comm.*, 269 Neb. 401, 693 N.W.2d 539 (2005).

Statutory interpretation presents a question of law. *Rauscher v. City of Lincoln,* 269 Neb. 267, 691 N.W.2d 844 (2005). When an appeal calls for statutory interpretation or presents a question of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Soto v. State,* 269 Neb. 337, 693 N.W.2d 491 (2005).

## ANALYSIS

On appeal, Caspers assigns that the district court erred in finding that the State Patrol presented a prima facie case with respect to 17 of the 20 violations for which Caspers was sanctioned. Caspers does not dispute the two violations it was found to have committed under 49 C.F.R. § 391.11 (2004), i.e., using a driver without a valid vehicle operator's license. Caspers' appellate brief challenges the 18 remaining violations. However, during oral argument before this court, Caspers conceded to a third violation dealing with the use of a commercial motor vehicle not periodically inspected, limiting its challenge to 17 of the 20 violations it was found to have committed.

Caspers argues that proof of a violation under § 75-363 requires that the conduct allegedly constituting the violation be shown to have occurred in Nebraska intrastate commerce. Caspers argues that no such evidence was provided in support of the 17 contested violations. But before considering the specific evidence at issue in this case, we must determine the applicable legal standard that the evidence was required to meet. To do so, we must examine the statutory scheme pursuant to which the relevant regulations were adopted.

Section 75-363 stated, in part:

> The parts of the federal Motor Carrier Safety Regulations, 49 C.F.R., as modified in this section and any other parts referred to by such parts, in existence and effective as of January 1, 2002, are adopted as Nebraska law. Except as otherwise provided in this section, the regulations shall be applicable to all carriers, drivers, and vehicles to which the federal regulations apply, to all vehicles of *intrastate motor carriers* with a gross vehicle weight rating, gross combination weight rating, gross vehicle weight, or gross combination weight over ten thousand pounds . . . to all *intrastate motor carriers* in the operation of vehicles with a gross vehicle weight rating, gross combination weight rating, gross vehicle weight, or gross combination weight over ten thousand pounds . . . and to all drivers of such vehicles if the drivers are operating a commercial motor vehicle as defined in section 60-465 which requires a commercial driver's license.

(Emphasis supplied.) Further, Neb. Rev. Stat. § 75-369.03 (Reissue 2003) states: "The Superintendent of Law Enforcement and Public Safety may issue an order imposing a civil penalty against . . . an *intrastate motor carrier* for violation of section 75-363 . . . ." (Emphasis supplied.)

Although the statutes make clear that intrastate motor carriers in violation of federal motor carrier safety regulations adopted by § 75-363 are subject to civil penalties, they do not explicitly define the term "intrastate motor carriers." However, Neb. Rev. Stat. § 75-302(11) (Reissue 2003) defines "intrastate commerce" as "commerce between any place in this state and any other place in this state and not in part through any other state." "Motor carrier" is defined as "any person other than a regulated motor carrier who or which owns, controls, manages, operates, or causes to be operated any motor vehicle used to transport passengers or property over any public highway in this state." § 75-302(12).

In construing a statute, an appellate court should consider the statute's plain meaning in pari materia and from its language as a whole to determine the intent of the Legislature. *Cox Nebraska Telecom v. Qwest Corp.*, 268 Neb. 676, 687 N.W.2d 188 (2004). Reading § 75-369.03 in its statutory context, we conclude that the purpose of the statutory scheme is to provide for the regulation of motor carriers that are not subject to federal regulation. Section 75-369.03 states that the superintendent

> may issue an order imposing a civil penalty . . . against an intrastate motor carrier for violation of section 75-363 or 75-364 based upon an inspection conducted pursuant to section 75-366 . . . . Upon the discovery of any violation by an interstate motor carrier of section 75-307, 75-352, 75-363, or 75-364 based upon an inspection conducted pursuant to section 75-366, the superintendent shall immediately refer such violation to the appropriate federal agency for disposition . . . .

In this case, Caspers was charged with violating the following parts of title 49 of the Code of Federal Regulations, all of which are adopted as Nebraska law under § 75-363: 49 C.F.R. §§ 391.11(b)(5), 395.8(a), 396.11(a), and 396.17(a) (2004). Accordingly, the superintendent has authority to impose penalties on Caspers for the above violations only if Caspers is an "intrastate

motor carrier." If Caspers is an "interstate motor carrier," such violations must be referred to the appropriate federal agency.

Under federal law, interstate motor carriers must register to provide transportation or service. See 49 U.S.C.A. §§ 13901 and 13501 et seq. (1997 & Cum. Supp. 2005). See, generally, *Mid-Con Freight Sys. v. Mich. Public Service*, 545 U.S. 440, 125 S. Ct. 2427, 162 L. Ed. 2d 418 (2005). Section 13501 specifies that the Secretary of Transportation and the Surface Transportation Board have jurisdiction

> over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier—
> (1) between a place in—
> (A) a State and a place in another State;
> (B) a State and another place in the same State through another State.

As we previously stated, the purpose of the Nebraska statutes at issue in this case is to ensure that motor carriers not falling under federal jurisdiction are nonetheless subject to regulation under state law. To effectuate that purpose, we must look to the parameters of jurisdiction granted to the secretary and board in order to define the jurisdiction of the state to impose penalties under § 75-369.03. The clear import of the legislative scheme is to subject a carrier to motor carrier safety regulations under *either* federal jurisdiction *or* state jurisdiction, but not both at the same time. In other words, an "interstate motor carrier" within the meaning of § 75-369.03 is a carrier subject to federal jurisdiction pursuant to the federal motor carrier safety regulations, as delimited by 49 U.S.C.A. § 13501 et seq., and an "intrastate motor carrier" is a carrier not subject to that federal jurisdiction.

It is also apparent that whether a particular violation of motor vehicle safety regulations is within federal or state jurisdiction is determined by the nature of the activity in which the violation took place. Obviously, as in this case, a motor carrier may be in the business of conducting both intrastate and interstate operations. Thus, whether such a carrier's violation of safety regulations is subject to federal or state authority depends on whether the transaction during which the violation occurred was "interstate" or "intrastate" as explained above.

In the instant case, then, the question is whether the violations found to exist by the superintendent were committed during an interstate or intrastate transaction, as that delineation is drawn from the relevant federal statutes. Caspers argues that the district court erred in concluding that the charged violations occurred in Nebraska intrastate commerce.

The court based its conclusion on a document signed by Elsie Caspers, co-owner and secretary-treasurer of Caspers, that states: "Caspers Construction Company employed the following as drivers of the company vehicles with excess of 10,000 lbs. [gross vehicle weight rating] and used the drivers in Intrastate commerce." Following the statement, the document goes on to list the dates of the alleged violations and the drivers and vehicles involved. The district court concluded that although the document's reference to intrastate commerce does not specifically refer to *Nebraska* intrastate commerce, such meaning was clearly intended based on reasonable inferences from the evidence. The court based such inferences on evidence that a compliance review of Caspers was in fact conducted by the Nebraska State Patrol and upon proof that Caspers is a Nebraska corporation.

Caspers argues that the court incorrectly inferred that the reference to intrastate commerce implicated *Nebraska* intrastate commerce because a compliance review of Caspers was conducted by the Nebraska State Patrol. As set forth by the district court in its order, the State Patrol has the initial burden of presenting evidence to support the violations charged against Caspers. Caspers argues that the court failed to hold the State Patrol to its obligation and, instead, that the court assumed, because the State Patrol was shown to have conducted the compliance review, it must have had jurisdiction to do so.

Caspers also argues that the district court improperly inferred that the reference to intrastate commerce in the document signed by Elsie Caspers referred to Nebraska intrastate commerce based on evidence that Caspers is a Nebraska corporation. Specifically, Caspers argues that the state in which a business is incorporated need not have any connection with the location in which that company conducts the majority of its business. Further, Caspers correctly asserts that the appropriate question is whether the 17 disputed violations occurred in Nebraska intrastate commerce,

not whether the majority of Caspers' business is conducted in Nebraska.

Caspers' arguments are without merit. Although the statement signed by Elsie Caspers did not refer specifically to *Nebraska* intrastate commerce, the other evidence relied upon by the district court and otherwise present in the record supports a reasonable inference that the document was referring to intrastate commerce in the State of Nebraska. Specifically, the FMCSA visited Caspers, and after determining that the company was an intrastate operation, contacted the Nebraska State Patrol to conduct a compliance review. Trooper Aude, of the Nebraska State Patrol, performed the compliance review, working closely with Elsie Caspers and a Caspers secretary during the process. Trooper Aude testified that the document presented to and eventually signed by Elsie Caspers was presented as per standard procedure for compliance reviews. In addition, Trooper Aude testified that she advised Elsie Caspers to ensure the accuracy of the document before signing it. Among the documents submitted during the State Patrol hearing in support of the alleged violations were Nebraska certificates of title and Nebraska registration information for Caspers' vehicles. Evidence of Caspers' incorporation in Nebraska was also presented at the State Patrol hearing, along with a letter from Caspers' state senator, requesting leniency for Caspers stating: "This company has been in my legislative district and conducted business for over 25 years."

The document's reference to "intrastate" commerce must have been intended to mean commerce in *some* state—the question is, which state? Given the circumstantial evidence of Nebraska's relationship to the corporation, its business, and the investigation during which the document was created, it is reasonable to infer that Nebraska was the state in question. Furthermore, the document specifically states that Caspers "employed the following as drivers of the company vehicles . . . and used the drivers in Intrastate commerce" and follows that statement with a detailed list of the dates on which the alleged violations occurred, identifying the driver and vehicle associated with each violation. Read as a whole, the document is fairly read as an admission that each of the listed violations occurred in Nebraska intrastate commerce.

We are required to decide whether the district court's decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable. In conducting that review, we do not substitute our factual findings for those of the district court where competent evidence supports those findings. In this case, the district court's conclusion that Elsie Casper's statement refers to Nebraska intrastate commerce was reasonable based on competent evidence presented at the State Patrol hearing. The inference implicating Nebraska intrastate commerce is not only reasonable but, indeed, the most rational conclusion under the circumstances. Furthermore, Elsie Casper's statement may be fairly read as an admission that each violation occurred in Nebraska intrastate commerce.

## CONCLUSION

The district court did not err in finding that the State Patrol presented a prima facie case with respect to the 17 violations contested by Caspers because competent evidence was adduced to prove that each of the alleged violations occurred in Nebraska intrastate commerce. The judgment of the court conforms to the law and is affirmed.

AFFIRMED.

WRIGHT, J., not participating.