

FILED

Jan 31 2020, 5:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

James Bopp, Jr.
Corrine L. Youngs
Amanda Narog
Terre Haute, Indiana

ATTORNEYS FOR APPELLEES

Peter J. Rusthoven
John Maley
J. Curtis Greene
Dylan A. Pittman
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Small Business in Transportation Coalition, et al. <br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Indiana Department of Revenue, et al., <br> *Appellees-Defendants* | January 31, 2020 <br><br> Court of Appeals Case No. 19A-PL-370 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Kurt Eisgruber, Judge <br><br> Trial Court Cause No. 49D06-1711-PL-43017 |

**Altice, Judge.**

### Case Summary

[1] For more than fifty years, Congress has authorized states to require interstate motor carriers operating within their borders to register proof of the carriers' federal interstate operating permits. Several registration systems have been

promulgated by the federal government to allow states to charge annual registration fees without violating the United States Constitution by constituting an undue burden on interstate commerce. Most recently, pursuant to the Unified Carrier Registration Act of 2005 (the UCR Act), Congress replaced the Single State Registration System (the SSRS) with the Unified Carrier Registration System (the UCRS), which went into effect in 2007 and is administered by the Secretary of the United States Department of Transportation (the Secretary).

[2] The UCRS includes, under the same name, a revamped and consolidated online Federal registration system. In addition to the federal registration system, the UCR Act established a corresponding State registration system, involving the creation of a UCR Plan, UCR Board, and UCR Agreement. Indiana, along with forty other states, opted to participate in this new base-state system for the collection of registration fees from interstate motor carriers. Indiana's participation is administered by the Indiana Department of Revenue (INDOR), the agency responsible for regulating commercial transportation. Indiana not only has participated in the UCR Plan but, through a series of agreements between the UCR Board and INDOR, operated a national online portal (the Portal) between 2008 and 2018, which provided carriers across the nation the convenience of registering and paying their UCR fees online, with nominal user and access fees. Registration through the Portal was voluntary, as carriers could register and pay fees directly with their base state.

[3]     Daywalt Trucking (Daywalt) is a carrier that owed UCR fees and used INDOR's portal to pay them, as did 12 Percent Logistics, Inc. (Broker) and trade association members of Small Business in Transportation Coalition (Coalition) (collectively, Plaintiffs). Plaintiffs filed a class action complaint against INDOR and its commissioner, Adam J. Krupp, claiming that INDOR lacked authority under state law to register carriers and collect UCR-related fees. Asserting equitable theories of recovery, such as unjust enrichment, Plaintiffs sought the recovery of hundreds of millions of dollars in fees paid through the Portal since 2008.

[4]     INDOR responded to the complaint with multiple dispositive motions based on, among other things, lack of standing, failure to state a claim, and failure to join indispensable parties. Following a hearing, the trial court issued a final order in which it granted each of INDOR's dispositive motions.

[5]     The issues presented on appeal are plentiful, but we need not reach them all. The undisputed evidence establishes that Plaintiffs, out of convenience, voluntarily chose to use the Portal to pay UCR fees that they concededly owed under the UCRS. They owed these fees, which were set by the Secretary – not INDOR, regardless of whether the Indiana legislature had properly granted INDOR authority to collect such fees and operate the Portal. Further, Plaintiffs do not allege that INDOR failed to transmit the UCR fees it collected through the Portal to the proper base states.

[6] In sum, INDOR, under agreements with the UCR Board, collected UCR fees from interstate carriers across the country that were owed and then distributed the funds pursuant to the UCR Plan and Agreement. INDOR's actions resulted in satisfaction of Plaintiffs' UCR obligations for about a decade. Plaintiffs' attempt to recoup, based on equitable theories, hundreds of millions of dollars paid through the Portal is without basis in law.

[7] We affirm.

## Federal & State Regulation of Carriers

[8] "Federal law has long required most motor carriers doing interstate business to obtain a permit – which we shall call a Federal Permit – that reflects compliance with certain federal requirements." *Mid-Con Freight Sys., Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 440, 442 (2005). Since 1965, Congress has authorized states to require proof that interstate carriers had secured such a Federal Permit. *Id*. "Congress provided that state registration requirements would not constitute an undue burden on interstate commerce so long as they were consistent with regulations promulgated by the [federal government]." *See Yellow Transp., Inc. v. Michigan*, 537 U.S. 36, 39 (2002).

[9] The first system used for state registration came to be known as the Bingo Card System, in which participating states were permitted to charge carriers annual registration fees of up to $10 per vehicle and, as proof of registration, states would issue stamps to be affixed on a card, carried in each vehicle, within the square bearing the name of the issuing state. *See id*. "The 'bingo card' regime

proved unsatisfactory to many who felt that the administrative burdens it placed on carriers and participating States outweighed the benefits to those States and to the public." *Id.*; *see also Mid-Con Freight Sys., Inc.*, 545 U.S. at 443 (describing the system as "inefficient and burdensome"). Accordingly, in 1991, Congress directed the implementation of a new system.

The SSRS went into effect in 1994, replacing the Bingo Card System. Under this new system, a trucking company could annually fill out one set of forms in one state (its base state) in order to effectively register its Federal Permit in every participating state through which its trucks would travel. *See Mid-Con Freight Sys., Inc.*, 545 U.S. at 443. "Thus, one State would – on behalf of all other participating States – register a carrier's vehicles, file and maintain paperwork, and collect and distribute registration fees." *Yellow Transp., Inc.*, 537 U.S. at 40. The base state was then responsible for distributing to each participating state its share of the total registration fee. *See Mid-Con Freight Sys., Inc.*, 545 U.S. at 444. Congress capped the per-vehicle fee that participating states could charge and directed the federal administrative body, then the Interstate Commerce Commission (the ICC), to establish a fee system under certain constraints. *Yellow Transp., Inc.*, 537 U.S. at 40. Congress abolished the ICC in 1995 and assigned responsibility for administering the SSRS to the Secretary. *Id.*

The UCR Act of 2005 created the newest of the federally mandated systems, the UCRS, which replaced the SSRS in 2007. The bulk of the UCR Act

consisted of two statutes. First, Congress made a wholesale amendment to 49 U.S.C. § 13908, which, as amended, provided in part:

> **(a) Establishment of Unified Carrier Registration System.** --
> The Secretary, in cooperation with the States, representatives of the motor carrier, motor private carrier, freight forwarder, and broker industries and after notice and opportunity for public comment, shall issue within 1 year after the date of enactment of the [UCR Act] regulations to establish an online Federal registration system, to be named the "Unified Carrier Registration System", to replace--
>
>> **(1)** the current Department of Transportation identification number system, *the single State registration system under section 14504*;
>>
>> **(2)** the registration system contained in this chapter and the financial responsibility information system under section 13906; and
>>
>> **(3)** the service of process agent systems under sections 503 and 13304.
>
> **(b) Role as clearinghouse and depository of information.**--
> The Unified Carrier Registration System shall serve as a clearinghouse and depository of information on, and identification of, all foreign and domestic motor carriers, motor private carriers, brokers, freight forwarders, and others required to register with the Department of Transportation, including information with respect to a carrier's safety rating, compliance with required levels of financial responsibility, *and compliance with the provisions of section 14504a*. The Secretary shall ensure that Federal agencies, States, representatives of the motor carrier industry, and the public have access to the

> Unified Carrier Registration System, including the records and information contained in the System.

> ****

(Emphases added.)

[12] Second, Congress repealed 49 U.S.C. 14504 (which addressed the SSRS) and enacted 49 U.S.C. 14504a, entitled "Unified Carrier Registration System plan and agreement." 49 U.S.C. 14504a is a lengthy statute that sets out the UCRS with regard to the states. The statute begins by providing definitions, of which we note the following:

> **(2) Base-State.--**

>> (A) In general.--Subject to subparagraph (B), the term "base-State" means, with respect to a unified carrier registration agreement, a State--

>>> (i) that is in compliance with the requirements of subsection (e); and

>>> (ii) in which the motor carrier, motor private carrier, broker, freight forwarder, or leasing company to which the agreement applies maintains its principal place of business.

>> (B) Designation of base-State.--A motor carrier, motor private carrier, broker, freight forwarder, or leasing company may designate another State in which it maintains an office or operating facility to be its base-State in the event that--

(i) the State in which the motor carrier, motor private carrier, broker, freight forwarder, or leasing company maintains its principal place of business is not in compliance with the requirements of subsection (e); or

(ii) the motor carrier, motor private carrier, broker, freight forwarder, or leasing company does not have a principal place of business in the United States.

****

**(6) Participating state**.--The term "participating State" means a State that has complied with the requirements of subsection (e).

**(7) SSRS**.--The term "SSRS" means the single state registration system in effect on the date of enactment of this section.

**(8) Unified carrier registration agreement**.--The terms "unified carrier registration agreement" and "UCR agreement" mean the interstate agreement developed under the unified carrier registration plan governing the collection and distribution of registration and financial responsibility information provided and fees paid by motor carriers, motor private carriers, brokers, freight forwarders, and leasing companies pursuant to this section.

**(9) Unified carrier registration plan**.--The terms "unified carrier registration plan" and "UCR plan" mean the organization of State, Federal, and industry representatives responsible for developing, implementing, and administering the unified carrier registration agreement.

****

49 U.S.C. 1450a(a).

[13]     With regard to the UCR Plan, the statute provides that it shall be governed by a "board of directors consisting of representatives of the Department of Transportation, participating States, and the motor carrier industry." 49 U.S.C. 1450a(d)(1)(A). The fifteen directors are appointed by the Secretary with five directors from each of the following: the Federal Motor Carrier Safety Administration, the professional staffs of state agencies responsible for overseeing the administration of the UCR Agreement, and the motor carrier industry. 49 U.S.C. 1450a(d)(1)(B). The UCR Board is responsible for issuing "rules and regulations to govern the UCR agreement." 49 U.S.C. 1450a(d)(2). In its administration of the UCR Agreement, the UCR Board is permitted to "contract with any person or any agency of a State to perform administrative functions …, but may not delegate its decision or policy-making responsibilities." 49 U.S.C. 1450a(d)(6). Additionally, the UCR Board is tasked with recommending to the Secretary the annual fees to be assessed carriers under the UCR Agreement, but the Secretary ultimately sets those fees. 49 U.S.C. 1450a(d)(7). "Motor carriers, motor private carriers, leasing companies, brokers, and freight forwarders shall pay all fees required under this section to their base-State pursuant to the UCR Agreement." 49 U.S.C. 1450a(f)(4).

[14]     Finally, for our purposes, we observe that the statute provides that a state is eligible to participate in the UCR Plan and receive revenues under the UCR

Agreement if the state, within three years of the enactment of the UCR Act, submits to the Secretary a plan:

> (A) identifying the State agency that has or will have the legal authority, resources, and qualified personnel necessary to administer the agreement in accordance with the rules and regulations promulgated by the board of directors; and

> (B) demonstrating that an amount at least equal to the revenue derived by the State from the unified carrier registration agreement shall be used for motor carrier safety programs, enforcement, or the administration of the UCR plan and UCR agreement.

49 U.S.C. 1450a(e).

**Indiana's Participation in the UCR Plan**

Indiana, through INDOR, filed a plan with the Secretary on or about October 4, 2006, for participation in the UCR Plan, along with a certification indicating the amount of revenue Indiana received under the SSRS for the 2004 registration year. Additionally, in 2007, the Indiana General Assembly amended several code provisions dealing with motor carrier regulation. *See* P.L.42-2007. The amendments, particularly to Ind. Code Chapter 8-2.1-20 (entitled "Interstate Motor Carriers"), reflect an intent to align our statutes with the UCRS. *See e.g.*, P.L. 42-2007, § 6 (amending I.C. § 8-2.1-20-7 to replace reference to the SSRS with the UCRS), § 7 (adding subsection (b) to I.C. § 8-2.1-20-9, which provides: "If there is a conflict between this chapter and the unified carrier registration system established under 49 U.S.C. 13908 et seq. and

the regulations adopted by the United States Secretary of Transportation under 49 U.S.C. 13908 et seq., the federal statute and regulations control."); *see also Appellants' Appendix Vol. 3* at 165 (fiscal impact statement for the legislation indicated that the bill "makes various changes to conform with the [UCRS]" and that said changes "could mean additional revenue accruing to the state, the amount of which is not determinable at this time because the rates and fees have yet to be established for the program"). At the conclusion, the General Assembly indicated that the act's amendments "shall apply to registrations and fees due after December 31, 2006" with the following exception:

> If the effective date for the repeal of the single state registration system established under 49 U.S.C. 11506 is delayed by the Congress of the United States, the provisions listed in subsection (a), as they existed on December 31, 2006, shall be applied in Indiana until the earlier of the following:
>
> > (1) The date a state is required to conform to the unified carrier registration system established under 49 U.S.C. 13908 as required by an act of the Congress of the United States or by a regulation of the United States Department of Transportation.
> >
> > (2) January 1, 2008.

P.L. 42-2007, § 21.

[16] In addition to Indiana participating as a base state in the UCR Plan since 2007, INDOR contracted with the UCR Board to develop, manage, operate, and host the Portal, an online "UCR System accessible to other states and registrants" with "registration functionality regarding the collection and distribution of funds collected by INDOR on behalf of the UCR states." *Appellants' Appendix*

*Vol. 2* at 71. The first Memorandum of Understanding (MOU) went into effect in January 2008 with a five-year term. Under the 2008 MOU, INDOR was to, on behalf of the UCR Board, operate the Portal and collect UCR fees, as set by the Secretary. The agreement also provided that INDOR would charge and collect $3.00 for each registration transaction completed through the Portal (user fee) and that each registrant would pay a credit card access fee or an eCheck instant access fee (instant access fee). INDOR agreed to maintain accurate records pertaining to the transactions and to "distribute funds to the states collected on their behalf every thirty (30) days." *Id*. at 72. INDOR and the UCR Board entered into a new MOU in 2013 for improvements and enhancements to the "comprehensive, one-stop web site for UCR information and transaction services" operated by INDOR, including the development and maintenance of the depository reporting system for the UCRS and additional reporting requirements. *Id*. at 77. The parties executed the final MOU in 2016, with a scheduled end date of September 30, 2018. The 2016 MOU discontinued the $3.00 user fee beginning in 2017 and, instead, the UCR Board paid a support and maintenance fixed fee to INDOR of $1,320,000 annually. INDOR ceased operating the Portal on behalf of the UCR Board in September 2018.

### Facts Directly Related to Plaintiffs & this Litigation

Daywalt is a trucking company located in Pennsylvania that operates for-hire commercial trucks interstate. Between the years 2009 and 2018, Daywalt chose

to register and pay UCR fees through the Portal for its base state, Pennsylvania. In utilizing the Portal, Daywalt also paid user and instant access fees.

[18] Broker is a broker company with its principal place of business in Florida, and it registered through the Portal each year between 2008 and 2018. Because Florida is not a participating state, Broker's base state has varied between Georgia and South Carolina.

[19] Coalition is a trade organization located in Washington, D.C., with over 8000 members. It represents, promotes, and protects the interests of small businesses in the transportation industry. Many of its members have registered through the Portal between 2008 and 2018 and paid UCR-related fees.

[20] Plaintiffs brought the instant class action challenging, through an amended complaint filed in April 2018, INDOR's authority under state law to register and collect UCR-related fees (that is, UCR fees, user fees, and instant access fees) from interstate motor carriers under the UCR Plan and to enter into the MOUs with the UCR Board. The proposed class representatives, Daywalt and Broker, brought suit on behalf of themselves and similarly situated persons "to recover hundreds of millions of dollars in unlawful UCR-Related Fees collected from Carriers since 2008." *Id*. at 44. They defined the proposed class (the Class)[1] as follows:

---

[1] The trial court stayed ruling on Plaintiffs' motion for class certification until various dispositive motions were ruled upon, the rulings of which are the subject of this appeal.

> All motor carriers, motor private carriers, brokers, freight forwarders, and leasing companies that have registered with INDOR under the [UCRS] and that have paid the UCR Fee, the Usage Fee, and/or the Instant Access Fee to INDOR since 2008.

*Id.* at 46. Coalition, though not a class representative or member of the Class, asserted the interests of its members, seeking declaratory and injunctive relief on their behalf regarding the future registration of carriers and collection of UCR-related fees by INDOR.

[21] Daywalt, Broker, and the Class sought repayment of all UCR-related fees paid through the Portal since 2008. They relied on two equitable theories of recovery – unjust enrichment and money had and received. Plaintiffs also sought declaratory and injunctive relief.

[22] INDOR responded to the amended complaint by filing, on April 30, 2018, five dispositive motions: 1) a motion to dismiss for lack of standing; 2) a motion to dismiss based on INDOR's statutory authority; 3) a motion to dismiss for failure to state a claim; 4) a motion to dismiss for failure to join indispensable parties; and 5) a motion for summary judgment based on lack of notice under the Indiana Tort Claims Act or sovereign immunity. On appeal, Plaintiffs have not provided us with any of INDOR's motions or related filings. Additionally, Plaintiffs have not included in their appendix any of their responses to the motions or their own subsequent motion for partial summary judgment, filed on June 25, 2018. The omissions in Appellants' seven-volume appendix are glaring and the context of the various documents and exhibits included therein

is unclear. Because INDOR has not objected or argued otherwise, we will presume that these documents and exhibits were all before the trial court and considered by the trial court in its consideration of the pending motions.

[23] On December 5, 2018, the trial court held a summary judgment hearing regarding the pending motions. Thereafter, on January 18, 2019, the trial court issued an order on all pending dispositive motions. In its detailed order, the court granted each of INDOR's motions and denied Plaintiffs' motion for partial summary judgment. The court entered final judgment in favor of INDOR. Plaintiffs now appeal. Additional facts will be provided below as needed.

## Standard of Review

[24] In arguing the motions to dismiss and the competing summary judgment motions, the parties relied on substantial matters outside of the pleadings, as is apparent from our review of the transcript and the seven-volume appendix. Indiana Trial Rule 12(B) provides in part:

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Accordingly, we apply the summary judgment standard in our review of the T.R. 12(B)(6) claims. Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Our review is de novo, and we may affirm the grant of summary judgment on any theory supported by the designated evidence. *See Jurich v. Indiana Dep't of Transp.*, 126 N.E.3d 846, 855 (Ind. Ct. App.), *trans. denied*.

## Discussion & Decision

At the core of Plaintiffs' complaint and arguments on appeal is their assertion that none of the amendments made by the Indiana General Assembly in 2007, via P.L. 42-2007 (the 2007 Legislation), "dealt with the adoption of the UCR Plan, 49 U.S.C. § 14504a, or its implementation in Indiana." *Appellants' Brief* at 28. We do not accept this myopic view.

The clear intent of the 2007 Legislation was to continue Indiana's participation as a base state for the registration and collection of fees upon Congress's repeal of the SSRS and implementation of the UCRS. Indeed, the 2007 Legislation expressly provided that if the effective date for the repeal of the SSRS was delayed by Congress, the prior SSRS provisions would be applied in Indiana until the earlier of the following: "(1) The date a state is required to conform to the UCRS established under 49 U.S.C. 13908 as required by an act of the Congress of the United States or by a regulation of the United States Department of Transportation" or (2) January 1, 2008. P.L. 42-2007, § 21.

In several instances, including above, the 2007 Legislation cited to 49 U.S.C. 13908 rather than or in addition to 49 U.C.S. § 14504a. *See* P.L. 42-2007, § 6

(amending I.C. § 8-2.1-20-7); § 7 (adding subsection (b) to I.C. § 8-2.1-20-9). We are mindful that the UCRS established both a federal registration system and a base-state registration system and that the latter is expressly addressed in § 14504a, including the creation of the UCR Board, the UCR Plan, and the UCR Agreement. But the references to § 13908, though imprecise, are understandable given the fact that the first subsection of this federal statute is titled "Establishment of Unified Carrier Registration System" and indicates that the UCRS's purpose is to replace, among other things, the SSRS. 49 U.S.C. §13908 (a). Additionally, this statute indicates that the UCRS shall "serve as a clearinghouse and depository of information…including information with respect to a carrier's … compliance with the provisions of section 14504a" and references the "costs of administration of the unified carrier registration agreement." 49 U.S.C. §13908 (b).

[28] Further reflective of the intent to continue Indiana's participation as a base state is the fact that the 2007 Legislation left in place I.C. § 8-2.1-20-5(a)(1), which requires carriers to register their Federal Permits annually with INDOR, and I.C. § 8-2.1-20-8, which indicates that "[f]ees collected under this chapter shall be deposited in the motor carrier regulation fund[.]" These provisions would be meaningless if Indiana were not a participant in the UCRS. Additionally, the fiscal impact statement filed with regard to the 2007 Legislation indicated that the bill "makes various changes to conform with the [UCRS]" and that said changes "could mean additional revenue accruing to the state, the amount of

which is not determinable at this time because the rates and fees have yet to be established for the program". *Appellants' Appendix Vol. 3* at 165.

[29] In sum, we conclude that the Indiana General Assembly implemented the UCRS, including the UCR Plan and Agreement, through the 2007 Legislation. INDOR, therefore, had legal authority to enter into the UCR Plan on Indiana's behalf with a broad enabling statute governing INDOR's administration of such:

> (a) The department may, subject to the approval of the governor, enter into an agreement or understanding with the United States Department of Transportation, any other appropriate agency of federal government, or any other department or agency of another state, for the purpose of more effective regulation of motor carriers.
>
> (b) In the furtherance of uniformity in the regulation of motor carriers, the department may by order or rule adopt orders, standards, or rules and regulations of the United States Department of Transportation, any other appropriate agency of the federal government, or another state or states as they affect motor carriers, whether or not specifically referred to under this chapter.

I.C. § 8-2.1-22-7.[2]

---

[2] Plaintiffs suggest that I.C. § 8-2.1-22-7 does not apply to interstate carriers. On the contrary, I.C. § 8-2.1-22-32 provides that the chapter applies to both "interstate and intrastate" carriers, "except to the extent this chapter contravenes the Constitution or the laws of the United States." Participation in the UCRS as a base state through the UCR Plan and Agreement is certainly not in contravention of federal law.

[30] In a web of arguments that involve picking apart I.C. § 8-2.1-22-7, Plaintiffs attempt to establish that INDOR acted without state authority by entering into the UCR Plan and the MOUs with the UCR Board. These include claims, under subsection (a) of the statute, that: the Governor did not expressly approve of INDOR entering into the UCR Plan and the MOUs; the UCR Agreement is "not an agreement with USDOT, any federal agency or a department or agency of another state"; "the UCR Board is not a federal agency of any kind"; and "neither the act of entering into the UCR Agreement nor the IN-MOUs was 'for the purpose of more effective regulation of motor carriers[.]'" *Appellants' Brief* at 33, 34, 35 (quoting I.C. § 8-2.1-22-7(a)). With respect to subsection (b) of the statute, Plaintiffs assert that: the UCR Plan does not involve or further uniformity in the regulation of motor carriers; INDOR did not act by order or rule under the Indiana Administrative Procedures Act; and the UCR Agreement is not an order, standard, or rule/regulation of the federal government or another state or states because it is simply "an interstate compact, overseen by the UCR Board, a non-governmental organization." *Id.* at 37. Finally, specifically addressing the MOUs, Plaintiffs allege that INDOR failed to lawfully execute the agreements "by having all appropriate signatures from each of the requisite agencies on the signature page of the contract itself." *Id.* at 41 (citing Ind. Code § 4-13-2-14.1).

[31] Although we find many of Plaintiffs arguments empty, we need not delve into the task of untangling and addressing each of them. This is because even if INDOR technically acted outside its statutory authority in executing the UCR

Plan and the MOUs, the Plaintiffs have no legal basis for recovering the amounts paid through the Portal.

[32] The following facts are undisputed. "[A]ll interstate Carriers are required to register for UCR by federal law in exactly the same way, regardless of INDOR's participation in the UCR Plan." *Appellants' Brief* at 37. Carriers' annual registration and payment of fees may be accomplished either directly through their base state or via "a national or regional electronic system" such as the Portal. *Appellants' Appendix Vol. 2* at 109 (section 10(b) of the UCR Agreement). Daywalt and Broker chose the convenience of registering immediately online through the Portal rather than "extend[ing] the additional effort of obtaining the required forms, writing a check, placing both the forms and the check into the care of the U.S. Postal Service [for registration] after their package is received and processed by the state." *Appellants' Brief* at 60-61. For this convenience, they paid user and instant access fees, as set out in the MOUs. The instant access fees were never in the hands of INDOR, but rather were kept by the third-party electronic payment processor for its services in facilitating the online transaction. The user fees, collected between 2008 and 2016, were approved by the UCR Board and retained by INDOR to cover overhead and operational costs of the Portal. The UCR fees were collected and distributed by INDOR pursuant to the UCR Agreement.

[33] Thus, INDOR acted as a collecting agent in its operation of the Portal for the convenient registration and payment of UCR fees by carriers across the country. With nominal convenience fees, INDOR collected the UCR-fee

obligations of carriers like Daywalt and Broker, who voluntarily chose to use the Portal. INDOR then distributed the UCR fees to the carriers' base states (or as otherwise provided in the UCR Agreement), resulting in the discharge of the carriers' annual registration and payment obligations.

[34] After years of voluntarily utilizing the Portal, Plaintiffs now raise equitable claims to score an inequitable result. This court will not oblige.

> Unjust enrichment is an equitable doctrine wherein a person who has been "unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1 (1937), cited in *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991). "Unjust enrichment is also referred to as quantum meruit, contract implied-in-law, constructive contract, or quasi-contract." *Coppolillo v. Cort*, 947 N.E.2d 994, 997 (Ind. App. 2011). It allows for recovery "where the circumstances are such that under the law of natural and immutable justice there should be a recovery." *Id*., quoting *Zoeller v. E. Chicago Second Century*, Inc., 904 N.E.2d 213, 220 (Ind. 2009). To prevail on an unjust enrichment claim under Indiana law, "a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Bayh*, 573 N.E.2d at 408; accord, *Creative Demos, Inc. v. Wal–Mart Stores, Inc.*, 142 F.3d 367, 372 (7th Cir.1998), quoting *Wright v. Pennamped*, 657 N.E.2d 1223, 1229-30 (Ind. App. 1995).

*Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 735-36 (7th Cir. 2011) (granting summary judgment in favor of defendant on unjust enrichment claim where, despite a possible technical violation of a state regulation by

defendant, plaintiff "actually ordered, received the benefit of, and paid for the services in question").

[35] Plaintiffs suggest that the registration here was "compelled by law" and not a "choice[] made by free market actors." *Appellants' Brief* at 51. On the contrary, Plaintiffs were not obligated to use the Portal. They chose to do so out of convenience. Regardless of whether they utilized the Portal, Plaintiffs were required to register and pay their UCR fees. By using the Portal, Plaintiffs' annual UCR obligations were satisfied with their base state. Common sense dictates that the only inequitable or unjust result here would be requiring INDOR to return the fees it collected through the Portal - fees that were either set by the Secretary or approved by the UCR Board and that were voluntarily paid by carriers to satisfy their undeniable obligations and funds that INDOR has properly distributed under the UCR Agreement and the MOUs. Plaintiffs' claims of unjust enrichment, as well as the related equitable claim of money had and received,[3] fails as a matter of law.[4] Thus, the trial court did not err in granting summary judgment to INDOR.[5]

---

[3] An action for money had and received exists where the defendant received money from the plaintiff "under such circumstances that in equity and good conscience he ought not to retain the same, and which money … belongs to the plaintiff, and where money has been received by mistake of facts, or without consideration, or upon a consideration that has failed, it may be recovered back." *Chosnek v. Rolley*, 688 N.E.2d 202, 211 (Ind. Ct. App. 1997).

[4] Coalition's claims for declaratory and injunctive relief, as they essentially conceded at the summary judgment hearing, are moot because INDOR ceased operating the Portal in September 2018.

[5] We need not reach the other dispositive issues presented on appeal.

[36]     Judgment affirmed.

Brown, J. and Tavitas, J., concur.